1
2
3
4
5
6
7
8
9

# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

10  J & J SPORTS PRODUCTIONS, INC.,      )   1:10-cv-1711 AWI GSA
                                         )
11              Plaintiff,               )   **FINDINGS AND RECOMMENDATIONS**
                                         )   **ON PLAINTIFF'S APPLICATION FOR**
12      v.                               )   **DEFAULT JUDGMENT BY THE COURT**
                                         )
13                                       )   (Document 26)
                                         )
14  TASHA A. JAMES, el al.,              )
                                         )
15                                       )
            Defendant.                   )
16  _____  )

17
18      On April 14, 2011, Plaintiff J & J Sports Productions, Inc. ("Plaintiff") filed the present

19  Application for Default Judgment by the Court against Defendant James & Carlton Family Pizza

20  ("Defendant"). (Doc. 26). Defendant has not filed an opposition. The matter was taken under

21  submission pursuant to Local Rule 230 (c) and (g) and the hearing scheduled for June 3, 2011,

22  was vacated.

                                **BACKGROUND**

23      Plaintiff filed the instant action on September 17, 2010. (Doc. 1). A first amended

24  complaint was subsequently filed on December 13, 2010. (Doc. 7). Defendant was served with

25  the summons and the first amended complaint on December 30, 2010. (Docs. 5). The first

26  amended complaint alleges violations of Title 47 of the United States Code sections 605 and 553.

27  Plaintiff also alleges a state law claim of conversion and a violation of California Business and

28

1

258c04dc554c

1   Professions Code section 17200, *et seq.*

2        Defendant has not answered the complaint or otherwise appeared in this action.  (Doc.

3   26-1 at pg. 4 lines 17-19 & Doc. 26-2 at ¶ 2).  On March 24, 2011, the Clerk of the Court entered

4   default against Defendant James & Carlton Family Pizza. (Doc. 23).

5        Plaintiff filed the instant application for default judgment on April 14, 2011. (Doc. 26).

6   Plaintiff requests that the Court enter default judgment against Defendant in the amount of

7   $112,200.00.  (Doc. 26-4 at pg. 2).  Despite being served with the application by United States

8   Mail, Defendant has not responded to the application.

9                                              **Legal Standard**

10       Federal Rule of Civil Procedure 55(b)(2) provides that judgment may be entered:

11            By the Court.  In all other cases, the party must apply to the court for a
         default judgment.  A default judgment may be entered against a minor or
12       competent person only if represented by a general guardian, conservator, or other
         like fiduciary who has appeared.  If the party against whom a default judgment is
13       sought has appeared personally or by a representative, that party or its
         representative must be served with written notice of the application at least 3 days
14       before the hearing.  The court may conduct hearings or make referrals--preserving
         any federal statutory right to a jury trial--when, to enter or effectuate judgment, it
15       needs to:
                      (A) conduct an accounting;
16                    (B) determine the amount of damages;
                      (C) establish the truth of any allegation by evidence; or
17                    (D) investigate any other matter.

18  "Upon default, the well-pleaded allegations of the complaint relating to liability are taken as

19  true." *Dundee Cement Co. v. Highway Pipe and Concrete Products*, 722 F.2d 1319, 1323 (7th

20  Cir.  1983); *TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917-918 (9th Cir. 1987).

21       Factors which may be considered by courts in exercising discretion as to the entry of a

22  default judgment include: (1) the possibility of prejudice to the plaintiff; (2) the merits of

23  plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake

24  in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default

25  was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil

26  Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-1472 (9th Cir.

27  1986).

28  ///

1                                                    **DISCUSSION**

2          Service of summons and complaint in this action was made on Defendant James &

3    Carlton Family Pizza on February 16, 2011.  A true and correct copy of the Proof of Service was

4    filed with this Court on March 17, 2011.  (Doc. 19).  Defendant failed to respond to the

5    complaint or otherwise appear in this action.  The Clerk of the Court entered default against

6    Defendant on March 24, 2011. (Doc. 23).  Defendant is not an infant or incompetent person, and

7    is not in the military service or otherwise exempted under the Soldiers' and Sailors' Civil Relief

8    Act of 1940.  (Doc. 26-2 1 at ¶ 3).

9          Plaintiff seeks judgment pursuant to Title 47 of the United States Code section 605

10   against Defendant for unlawfully intercepting, receiving and exhibiting the *"Number One": The*

11   *Floyd Mayweather, Jr. v. Juan Manuel Marquez Championship Fight Program* on September

12   19, 2009, at its commercial establishment located at 5103 W. Walnut Avenue, in Visalia,

13   California.  Plaintiff requests enhanced statutory damages in the amount of $110,000.00 and

14   $2,200.00 for state law conversion.

15         The relevant provisions of Title 47 of the United States Code section 605, which address

16   unauthorized publication or use of wire or radio communications, state:

17                  (a) . . . no person receiving, assisting in receiving, transmitting, or assisting
            in transmitting, any interstate or foreign communication by wire or radio shall
18          divulge or publish the existence, contents, substance, purport, effect, or meaning
            thereof, except through authorized channels of transmission or reception, (1) to
19          any person other than the addressee, his agent, or attorney. . .. No person not being
            authorized by the sender shall intercept any radio communication and divulge or
20          publish the existence, contents, substance, purport, effect, or meaning of such
            intercepted communication to any person. No person not being entitled thereto
21          shall receive or assist in receiving any interstate or foreign communication by
            radio and use such communication (or any information therein contained) for his
22          own benefit or for the benefit of another not entitled thereto. No person having
            received any intercepted radio communication or having become acquainted with
23          the contents, substance, purport, effect, or meaning of such communication (or
            any part thereof) knowing that such communication was intercepted, shall divulge
24          or publish the existence, contents, substance, purport, effect, or meaning of such
            communication (or any part thereof) or use such communication (or any
25          information therein contained) for his own benefit or for the benefit of another not
            entitled thereto.

26

27   Additionally, the aggrieved party is authorized to obtain statutory damages of "not less than

28   $1,000 or more than $10,000, as the court considers just" for each violation.  47 U.S.C. §

                                                         3

1  605(e)(3)(C)(i)(II).  The court may award enhanced damages up to $100,000 for each violation if

2  it finds the violation was willfully committed for commercial advantage or private financial gain.

3  47 U.S.C. § 605 (e)(3)(C)(ii).

4    Plaintiff attests that it is a closed-circuit distributor of sports and entertainment

5  programming that purchased and retained the commercial exhibition licensing rights to the

6  program at issue.  Plaintiff marketed the sub-licensing (commercial exhibition) rights in the

7  program to its commercial customers.  (Doc. 26-5 at ¶ 3).  Plaintiff contends that persistent signal

8  piracy of its programming costs the company, its customers, and the community millions of

9  dollars annually.  (Doc. 26-5 at ¶ 11).  Plaintiff believes this results in part from the perceived

10  lack of significant consequences (including nominal or minimal damage awards by the Courts

11  who hear its cases) for such unlawful interception and exhibition by the commercial signal

12  pirates.  (Doc. 26-5 at ¶ 12).  As such, Plaintiff requests the maximum allowance for statutory

13  violations, totaling $110,000.00.  (Doc. 26-5 at  ¶ 13).  Moreover, Plaintiff notes that Defendant

14  is a repeat offender noting that another action has been filed against this Defendant for similar

15  alleged misconduct at the same establishment occurring on the same evening.[1] (Doc. 26-4 at ¶¶

16  4-6).

17    Here, the summons and complaint were properly served on Defendant**.  (Doc. 19).  Thus,

18  it appears that Defendant's default was properly entered, and the complaint is sufficiently well-

19  pled.  By his default, Defendant has admitted to willfully violating the referenced statutes for

20  purposes of commercial advantage.

21    Although deterrence of future violations is an important objective of the statutes, the facts

22  before the Court indicate that Defendant's establishment is a medium-sized pizza parlor with a

23  maximum capacity of approximately sixty-five patrons.  Manual Ruiz, an investigator for

24  Plaintiff, submitted a affidavit indicating that the parlor contained two forty inch Phillips LCD

25  television sets that were located in the corners of the room.  (Doc. 26-3).  Ruiz conducted three

26  head counts while he was in the bar for a total of about fifty minutes, between 8:51 and 9:40

27

28

  [1]  Another action was filed against this Defendant by another Plaintiff in this district on September 16,
2010.  Joe Hand Promotions, Inc. v. Tasha James et al., 1:10-cv-1702-OWW-DLB.

1   p.m., on September 19, 2009. Each of the three counts revealed that "54+" persons were present

2   during the fight.[2]  Photographs of the establishment depict that the pizza parlor located in a strip

3   mall with other businesses. (Doc. 26-3 at 2-8).

4          Although Plaintiff requests $110,000.00 in damages for the Title 47 violations based in

5   part because Defendant is a repeat offender, it is noted that at the time of this order, liability

6   against Defendant in the other case has not yet been established. Moreover, while it appears the

7   establishment was either close to full, or filled to capacity, given the relatively humble nature of

8   the business itself, the Court finds that the amount of requested damages should be reduced. The

9   Court will recommend the maximum statutory award of $10,000.00 for the violation pursuant to

10   47 U.S.C. § 605(e)(3)(C)(i)(II) and an additional $30,000 in enhanced damages pursuant to 47

11   U.S.C. § 605 (e)(3)(C)(ii).

12          Additionally, Plaintiff seeks $2,200.00 in conversion damages, the value of the property

13   at the time of the conversion. (Doc. 26-5 at 8.) Under California law, "[c]onversion is the

14   wrongful exercise of dominion over the property of another. The elements of a conversion are

15   (1) the plaintiff's ownership or right to possession of the property at the time of the conversion;

16   (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3)

17   damages." *Greka Integrated, Inc. v. Lowrey*, 133 Cal.App.4th 1572, 1581, 35 Cal.Rptr.3d 684

18   (2005) (internal quotation marks omitted); *see also G.S. Rasmussen & Assocs., Inc. v. Kalitta*

19   *Flying Serv., Inc.*, 958 F.2d 896, 906 (9th Cir.1992). "Because conversion is a strict liability tort,

20   questions of the defendant's good faith, lack of knowledge, motive, or intent are not relevant."

21   *Gilman v. Dalby*, 176 Cal.App.4th 606, 615 n.1, 98 Cal.Rptr.3d 231 (2009). Exclusive right to

22   distribute a broadcast signal to commercial establishments constitutes a "right to possession of

23   property" for purposes of conversion. *See Don King Prods./Kingvision v. Lovato*, 911 F.Supp.

24   419, 423 (N.D. Cal. 1995); *see also DIRECTV, Inc. v. Pahnke*, 405 F.Supp.2d 1182, 1189 (E.D.

25   Cal. 2005) (concluding that the "right to distribute programming via satellite" constituted a "right

26   to possession of personal property" for purposes of a conversion claim under California law).

27

28
          [2] The first headcount revealed 54 people were present, the second head count revealed 57 people were
present, and the third head count revealed that 65 people were present.

1   Here, Plaintiff was granted the exclusive domestic commercial exhibition licensing rights

2   to the program at issue, and thus had the right to possession of the property at the time of the

3   conversion.  (Doc. 26-5, ¶ 3.)  Next, because Defendant did not legally purchase the pay-per-

4   view programming, the exhibition of "Number One": The Floyd Mayweather, Jr. v. Juan Manuel

5   Marquez Championship Fight Program event in the Pizza Factory on September 19, 2009,

6   constituted Defendant's conversion by a wrongful act or disposition of property rights.  (Doc. 26

7   at pg. 23).  Finally, Plaintiff has indicated that the sub-license fee for an establishment similar in

8   size to Defendant's for the program would have been $2,200.00.  (Doc. 26-5 at Ex. 1.)  Thus,

9   Plaintiff is entitled to damages for conversion in the amount of $2,200.00.

**RECOMMENDATIONS**

11   Based on consideration of the declarations, pleadings and exhibits to the present

12   application, the Court RECOMMENDS as follows:

13   1.   Plaintiff's application for default judgment be GRANTED;

14   2.   Judgment be entered in this action against Defendant James & Carlton Family

15       Pizza ; and

16   3.   Damages in the total amount of $42,220.00 be awarded as follows:

17       a.   For the violation of 47 U.S.C. § 605(e)(3)(C)(i)(II), the sum of $10,000.00;

18       b.   For the violation of  47 U.S.C. § 605 (e)(3)(C)(ii), the sum of $30,000.00;

19           and

20       c.   For the conversion of Plaintiff's property, the sum of $2,200.00.

21

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

1   ///

2          These findings and recommendations are submitted to the district judge assigned to this

3   action, pursuant to Title 28 of the United States Code section 636(b)(1)(B) and this Court's Local

4   Rule 304.  Within fifteen (15) days of service of this recommendation, any party may file written

5   objections to these findings and recommendations with the Court and serve a copy on all parties.

6   Such a document should be captioned "Objections to Magistrate Judge's Findings and

7   Recommendations."  The district judge will review the magistrate judge's findings and

8   recommendations pursuant to Title 28 of the United States Code section 636(b)(1)(C).  The

9   parties are advised that failure to file objections within the specified time may waive the right to

10  appeal the district judge's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

11         IT IS SO ORDERED.

12     **Dated:**   **June 7, 2011**               **/s/ Gary S. Austin**
                                              UNITED STATES MAGISTRATE JUDGE